**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tony Talmage Fairbank,<br><br>　　　　　Plaintiff,<br>vs.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-22-00936-PHX-SPL<br><br>**ORDER** |

Plaintiff Tony Talmage Fairbank seeks judicial review of the denial of his application for Social Security Disability Insurance and Supplemental Security Income under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 14), Defendant Commissioner of Social Security Administration's Answering Brief (Doc. 15), Plaintiff's Reply Brief (Doc. 18), and the Administrative Record (Doc. 11). Upon review, the Court vacates the Administrative Law Judge's decision and remands for further proceedings consistent with this Order (AR 51–65).[1]

**I.　BACKGROUND**

Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income on November 16, 2018, for a period of disability beginning on September 1, 2018. (AR 54). Plaintiff testified at an administrative hearing on August 19, 2020 (AR 20–50), after which the Administrative

---

[1] Administrative Record (*see* Doc. 11).

Law Judge ("ALJ") found Plaintiff was not disabled (AR 51–65). On October 20, 2021, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (AR 9–11).

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following medically determinable impairments: multiple sclerosis, major depressive disorder, and attention deficit hyperactivity disorder ("ADHD"). (AR 57). Ultimately, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the Social Security Act from September 1, 2018, through the date of this decision." (AR 55).

## II.   LEGAL STANDARD

A person is considered "disabled" for the purpose of receiving social security benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674–75 (9th Cir. 2017). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she or] he did not

rely." *Id.* The Court will not reverse for an error that is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id.* At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.     DISCUSSION

Plaintiff argues that the ALJ erred by (1) rejecting Plaintiff's symptom testimony; (2) discrediting the opinion of Dr. Adriana Weyer; and (3) identifying jobs incongruent with his residual functional capacity determination in the step five analysis. The Court finds that the ALJ erred with respect to the first two issues and therefore does not address the third issue, as Plaintiff concedes that it is moot as a result. (Doc. 14 at 19).

### a.     Plaintiff's Symptom Testimony

An ALJ must perform a two-step analysis to determine the credibility of a claimant's pain and symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets this burden and there is no evidence of malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the testimony. *Id.* at 1036. "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.").

Here, the ALJ noted that Plaintiff "reported difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, seeing, remembering information, completing tasks, concentrating, understanding information, following instructions, and using his hands." (AR 60 (citation omitted)). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout the decision." (AR 60).

Initially, it is difficult to determine what evidence the ALJ relied on to specifically reject Plaintiff's symptom testimony, as is required, because the decision immediately "drifts into a discussion of the medical evidence," leaving the Court to sift through the

4

discussion and attempt to assess which sections specifically relate to the subjective testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014); *Nelson v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08027-PCT-JZB, 2020 WL 1510332, at *3 (D. Ariz. Mar. 30, 2020) ("Indeed, this Court has repeatedly rejected ALJ rationale that discussed medical evidence but provided no connection between that discussion and rejection of claimant's symptom testimony."). Defendant posits that the ALJ relied on contradictions between Plaintiff's daily activities and subjective complaints, the fact that Plaintiff's impairments responded well to treatment, and inconsistencies with the medical record. (Doc. 15 at 5).

First, it does not appear that the ALJ found any contradictions between Plaintiff's daily activities and his symptom testimony. The ALJ's discussion of Plaintiff's activities comes in a different section, preceding the one in which the ALJ discusses Plaintiff's symptom testimony, and more importantly, does not identify any inconsistencies between those activities and Plaintiff's reported symptoms. For example, the ALJ wrote:

> The claimant is able to care for his personal care. . . . The claimant is able to clean his room and make his own bed. He stated there are times that he receives assistance from his mother. The claimant is able to do some light gardening. He is able to drive and he is able to shop for himself. The clamant stated he rarely engages in any household chores. At the consultative examination, he stated he does not prepare his own meals or do his laundry. However, in his function report, the claimant [said] he could prepare his own simple meals and do the laundry. Accordingly, the undersigned finds the claimant has experienced a moderate limitation in adapting or managing oneself.

(AR 59 (citations omitted)). The ALJ described Plaintiff's activities and noted an inconsistency between his reports about his activities—because Plaintiff reported *less* limitations in the function report he completed and submitted to the Social Security Administration than were noted in the examining physician's report. But the ALJ did not identify any inconsistencies to discredit Plaintiff's symptom testimony. Defendant's briefing attempts to draw contradictions between Plaintiff's activities and his symptom testimony, but the Court must "review the ALJ's decision based on the reasoning and

factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). There is no indication that the ALJ discredited Plaintiff's symptom testimony based on inconsistencies with his daily activities.

Second, the fact that Plaintiff reported to medical providers that medications stabilized or improved his symptoms is not necessarily inconsistent with his symptom testimony, and the ALJ did not explain whether or how they are inconsistent. To be sure, as the ALJ noted, Plaintiff stated that medications "improved the spasms in his legs and feet"; helped his gait; stabilized his ADHD; improved his mood and ability to focus; and improved his memory, although "he stated he still had a hard time." (AR 61). "But to reject a claimant's testimony, it is not enough for the ALJ to show that the [symptoms were] responsive to treatment; the ALJ must show that the [symptoms were] 'controlled,' i.e., no longer debilitating." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) (quoting *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). Moreover, "[o]bservations of improvement must be 'read in context of the overall diagnostic picture' of an individual, and improvement in some symptoms does not indicate nondisability under the Social Security Act." *Lizeth A. v. Comm'r of Soc. Sec.*, No. 1:17-cv-03074-MKD, 2018 WL 4179097, at *5 (E.D. Wash. Aug. 7, 2018) (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)). The ALJ did not elaborate on how Plaintiff's improvement or stabilization related to his symptom testimony—and in fact, it is not even clear that he relied on this as a reason for rejecting the testimony—nor did he establish that Plaintiff's symptoms as a whole are controlled such that Plaintiff is not disabled. Thus, to the extent this was even a reason for the ALJ's rejection of Plaintiff's symptom testimony, it is not a clear and convincing reason for discrediting his testimony.

The last remaining reason is that Plaintiff's symptom testimony is inconsistent with the medical record—which is the only reason on which the ALJ clearly relied. (*See* AR 61 ("As for the claimant's statements about the intensity, persistence, and limiting

6

effects of his symptoms, they are inconsistent because the medical evidence does not support them.")). But this reason alone cannot suffice for discrediting subjective symptom testimony. The Ninth Circuit has held that "once the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based *solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (emphasis added). This rule recognizes that "pain is a subjective phenomenon," and it "cannot be objectively verified or measured." *Id.* (citation omitted). Even assuming that Plaintiff's symptom testimony was unsupported by the medical evidence, then, it is insufficient support on its own to discredit the testimony. The Court therefore finds that the ALJ erred in rejecting Plaintiff's subjective symptom testimony.

### b. Dr. Weyer's Opinion

In 2017, the SSA revised its regulations regarding the evaluation of medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Because Plaintiff filed her case after 2017, it is governed by the new regulations. (AR 17). The ALJ was therefore not required to adhere to a hierarchy of medical opinions. 20 C.F.R. § 404.1520c(a)–(b); *see Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022). Rather, the ALJ meets her burden with respect to medical opinions by articulating the persuasiveness of each opinion using factors set forth in the regulations. *Id.* Supportability and consistency are the most important of these factors, but ALJs may also consider the nature of the treatment relationship, the medical source's specialization, and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(a)–(c).

Dr. Weyer, a counseling psychologist, examined Plaintiff on March 15, 2019 and diagnosed him with moderate recurrent major depressive disorder and ADHD. (AR 432, 436). Following her examination, Dr. Weyer opined that Plaintiff is capable of understanding and remembering simple and detailed instructions and procedures, though his ADHD may moderately impact his ability to recall instructions; that Plaintiff is

capable of carrying out simple instructions; and that Plaintiff is not capable of maintaining attention and concentration. (AR 437). She further opined that Plaintiff had no limitations in social interaction or adapting to change. (AR 437). The ALJ concluded that "[t]he opinion that the claimant had difficulty maintaining attention and concentration is not consistent with or supported by the medical evidence." (AR 62). The ALJ explained:

> The evidence does not show the claimant's depression or AD[H]D impacted the claimant's ability to focus. At his appointments, the claimant took medication for his depression and ADHD. His ADHD was stable. At the consultative examination, the claimant reported his memory was not good. Although he stated Adderall improved his memory, he stated he still had a hard time. At multiple appointments, the claimant denied depression, difficulty making decisions, difficulty concentrating, or memory loss. The claimant was able to follow multiple commands without difficulty. The claimant was alert and oriented.

(AR 62 (citations omitted)).

First, as explained above, the facts that Plaintiff took medication and that his ADHD was stable do not necessarily mean that Plaintiff was not disabled, nor do they necessarily conflict with Dr. Weyer's opinion that Plaintiff could not maintain attention or concentration. Because the ALJ failed to explain how they are inconsistent, those facts do not support the ALJ's discrediting of Dr. Weyer's opinion. Next, the ALJ recites Plaintiff's self-reported memory difficulties, which have no clear relation to Dr. Weyer's opinion regarding Plaintiff's attention capability. Likewise, the ALJ's last sentence—noting that Plaintiff was alert and oriented according to several medical records, including at a neurology appointment, an emergency room visit for a foot injury, and an appointment for hand pain—bear no relation to Plaintiff's ability to maintain attention. (AR 62; *see* AR 465, 542, 635).

That leaves only the ALJ's citations to medical records from Plaintiff's neurologists treating his multiple sclerosis that noted that Plaintiff denied a laundry list of symptoms, including difficulty concentrating, and that he could follow multiple

commands without difficulty.[2] (AR 62; *see* AR 450, 465, 494, 500). Even if those cursory notes from physicians focused on other ailments and symptoms are a sufficient inconsistency with Dr. Weyer's opinion, the ALJ failed to provide any discussion of the supportability factor—which requires consideration of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). The ALJ did not discuss whether Dr. Weyer's own examination and explanations supported her opinions.[3] Thus, the ALJ failed to satisfy the regulation's requirement that Defendant "will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision," and the decision must be vacated. 20 C.F.R. § 404.1520c(b)(2).

### IV. CONCLUSION

Finding error in the ALJ's evaluation and discussion of the evidence, this case will be remanded. "The proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (internal quotation marks omitted). Plaintiff argues instead that the Court should apply the credit-as-true rule and remand for calculation of benefits. One of the requisite conditions for applying the credit-as-true rule, however, is that "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The Court finds that this case would benefit from further administrative proceedings to develop and clarify the record.

---

[2] The ALJ also cites to a medical record that makes absolutely no mention of Plaintiff's concentration, instead describing a surgical procedure. (AR 62; *see* AR 482).

[3] Defendant's briefing cites to a different section of the ALJ's decision—as well as portions of Dr. Weyer's report not even mentioned by the ALJ—when arguing that the ALJ discussed the supportability factor. (Doc. 15 at 13–14). In that section, which does not mention Dr. Weyer's opinion regarding Plaintiff's ability to maintain attention and concentration, it is clear that the ALJ is merely conducting a step three analysis, not "determin[ing] how persuasive" the ALJ found Dr. Weyer's opinions or "explaining how [the ALJ] considered the supportability and consistency factors" in doing so. 20 C.F.R. § 404.1520c(b)(2). Accordingly, that discussion fails to satisfy the regulations.

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 18th day of May, 2023.

Honorable Steven P. Logan
United States District Judge